THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ANTHONY GRANO, Defendant-Appellant.

Second District    No. 2—96—0249

Opinion filed December 30, 1996.—Rehearing denied March 4, 1997.

Edward M. Genson and Elisha S. Rosenblum, both of Genson, Steinback, Gillespie & Martin, of Chicago, and Paul DeLuca, of Oakbrook Terrace, for appellant.

Joseph E. Birkett, State's Attorney, of Wheaton (William L. Browers, Martin P. Moltz, and Richard S. London, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE THOMAS delivered the opinion of the court:
Following a jury trial in the circuit court of Du Page County, the

defendant, Anthony Grano, was convicted of criminal sexual assault (720 ILCS 5/12—13(a)(4) (West 1994)). The defendant was sentenced to four years in prison. We reverse and remand for a new trial.

## FACTS

The facts relevant to our decision are as follows. At the January 1996 trial, 17-year-old K.M. testified that she first met the defendant when she joined his karate school, the Grano Karate School, at the age of six. The 40-year-old defendant was the owner of and head instructor at the karate school. The defendant was K.M.'s "sensai," her teacher. K.M. became an instructor at the karate school in 1993. Late in 1993 and early in 1994, she was at the karate school three to five times per week. On Tuesdays and Fridays, she was at the school by 4 or 5 p.m. On Wednesdays, she was there by 7:30 p.m.

K.M. further testified that the defendant initiated a physical relationship with her during the summer of 1993. The first instance occurred when the defendant drove K.M. home from the karate school. While parked in K.M.'s driveway, the defendant leaned over and French-kissed K.M. From that time forward, the kissing incidents became more passionate, occurring in the defendant's car, in his office at the karate school, and at K.M.'s house when her parents were away. On one occasion, the defendant kissed K.M. while they were in his office at the karate school. Because K.M.'s cousin, Jeff Gardner, was at the school at that time, the defendant locked the door to the office. On another occasion, the defendant kissed K.M. at her house while K.M.'s friend, Tina O'Nash, was in the next room. When O'Nash stepped outside to have a cigarette, the defendant locked the front door. He and K.M. then engaged in kissing and fondling one another. The defendant fondled K.M.'s breasts both outside and underneath her shirt. On yet another occasion, the defendant and K.M. were in the defendant's office at the karate school. K.M. was sitting on the desk while the defendant was standing between her legs. The defendant had unbuttoned a few buttons on her shirt, and they were kissing. The door suddenly opened, and Anthony Passo, another student at the school, walked in. The defendant jumped back from K.M. and pretended there was something in her eye.

In addition to these incidents, K.M. testified that she and the defendant engaged in dry sex and that she had given him a hand job to the point of ejaculation while in his office. When she and the defendant would go out for dinner with others from the karate school, they would sit next to one another and the defendant would place his jacket over his lap and their hands. They would rest their hands on each others' knees and the defendant would move her hand toward his groin area.

K.M. testified that in August 1993, the defendant drove K.M. and two other students, 23-year-old D.J. and 15-year-old Tara Romanow, to a karate tournament in Tennessee. During the ride, the defendant engaged K.M. in a graphic sexual conversation.

According to K.M., in February 1994, she and the defendant were kissing in his office at the karate school. He was sitting on his desk and she was standing between his legs. The defendant then stuck his hand down her pants and penetrated her vagina with his finger. K.M. was 15 years old at the time. K.M. testified that they never engaged in oral sex. She also testified that they never engaged in sexual intercourse, although the defendant had made arrangements to do so at a local hotel. She stated that he called her at home to discuss the arrangements one time when her friend, Kim McCullough, was there. She asked McCullough to pick up another extension and listen to their conversation. In February 1994, they both went to the hotel along with a group of karate students, but did not engage in sexual intercourse. That month, K.M. stopped attending the karate school.

K.M. testified that she eventually told her aunt what had been going on between her and the defendant. K.M. agreed to allow an investigator from the Du Page County Children's Center to tape phone conversations between her and the defendant on March 11 and March 14, 1994. The tapes were introduced at trial and admitted into evidence.

Anthony Passo testified that he was a student at the Grano Karate School. On one occasion, he opened the closed door to the defendant's office and walked in. He observed that K.M. was sitting on the desk and the defendant was standing close to her between her legs. K.M.'s shirt was partially unbuttoned and her makeup was smeared. Passo also testified that he saw the defendant place his hand on K.M.'s leg while seated at a table when the class went out for dinner.

Kim McCullough testified that she was a student at the Grano Karate School. On February 10, 1994, she was at K.M.'s house; at K.M.'s request, she listened in on a phone conversation between K.M. and the defendant about sex. She stated that she had seen the defendant place his hand on K.M.'s lap frequently while seated at a table when the class went out to dinner. McCullough also testified that she saw K.M. go into the defendant's office alone quite a few times. They would shut the door. Once, she saw K.M. leave the office with her shirt unbuttoned and untucked. K.M. immediately went to reapply her makeup in the bathroom.

Tina O'Nash, a friend of K.M.'s, testified that she was at K.M.'s

house in January 1994. The defendant stopped over. O'Nash heard K.M. and the defendant kissing and moving around on the plastic covered couches in the family room. She observed that K.M. and the defendant were alone five or six times in the defendant's office sometimes with the door locked. She also observed the defendant rub K.M.'s leg while seated at a table when they all went out to eat at a local restaurant.

At trial, Tara Romanow testified that the defendant drove her to a karate tournament in the summer of 1993, along with K.M. and D.J. She stated that the defendant engaged them in a graphic conversation about sex and asked them not to tell anyone about their conversation, especially his kids. When the class went out to eat at a local restaurant, she saw the defendant and K.M. holding hands many times underneath the table. K.M. was often alone with the defendant in his office and the door would be closed. Sometimes when K.M. exited the office, her shirt would be messy and she would go straight to the bathroom to reapply her lipstick. According to Romanow, during a conversation between her and K.M. in February 1994, K.M. acknowledged having had oral sex with the defendant.

Jeff Gardner, K.M.'s cousin, testified that he was a student at the Grano Karate School. He often saw K.M. go into the defendant's office alone and close the door. Once, when he tried to open the door, he found it to be locked. When he went out to eat after class, many times he saw the defendant and K.M. holding hands under the table and noted their hands were moving around beneath the defendant's jacket. The defendant often dropped Gardner and K.M. off at K.M.'s home after class. Once, the defendant came into K.M.'s home, and Gardner saw him kiss K.M. as she walked him out the door.

Jeff DiGangi, a friend of the defendant, testified that from August 1993 through February 1994, he attended classes at the Grano Karate School. Classes were held at the school four days each week. DiGangi arrived between 4 and 4:30 p.m. and the first classes started about 5:30 p.m. He testified that K.M. would show up at 5:30 p.m. when she had to instruct class or later to attend her 8:30 p.m. class. The door to the defendant's office was always open. He never saw K.M. and the defendant alone in the office and never saw them hold hands when the group went out to dinner after class. On April 14, 1994, he confronted K.M. about rumors he had been hearing regarding K.M. and the defendant. K.M. denied having had oral sex with the defendant but confirmed that the defendant had "fingered" her. DiGangi also testified that K.M. had a reputation among students at the school for not telling the truth.

Several other students at the Grano Karate School testified for

the defendant. Denise Fessenden testified that she attended classes on Tuesdays and Thursdays. She arrived between 8 and 8:30 p.m. K.M. always arrived late to class. Although the door to the defendant's office was closed at times, people would still enter the office without knocking. Fessenden also testified as to K.M.'s reputation for lack of truthfulness. Eric Jaegar testified that in early 1994 he was always the first to arrive at the karate school and that K.M. never arrived before 6:30 p.m. The defendant usually did not arrive until 7:30 p.m. Robert Mercier testified that his son had been attending the Grano Karate School for four years. He usually arrived at 6 p.m. The door to the defendant's office was always open.

Kathleen Wilson, K.M.'s aunt, testified that she had a conversation with K.M. early in 1994 regarding allegations that K.M. had made against the defendant. According to Wilson, K.M. told her that she had been involved in a relationship with the defendant and that he was pressuring her to do things. When Wilson asked if that included oral sex, K.M. responded with a shrug, which Wilson took to mean yes.

Sean Contreras, the defendant's nephew by marriage and business partner, confronted K.M. with the rumors he had heard about her and the defendant. K.M. was very upset, sobbing, and hesitant. She told him that the defendant "went down my pants and touched my breasts" but vacillated in her response as to whether she had engaged in oral sex with the defendant. Contreras observed K.M. to be alone with the defendant in his office with the door closed for 15 to 20 minutes on two occasions.

Robert Holguin, an investigator with the Du Page County Children's Center, testified that he interviewed K.M. and several other people. According to Holguin, K.M. told him that she and the defendant had begun a physical relationship in the six or seven months prior to February 1994. That relationship began with kissing, then progressed to fondling of her breasts and vaginal area. Eventually, the defendant inserted his fingers into her vagina. The physical contacts would occur two to four times per week, at the karate school, in his car, and once at K.M.'s home while her parents were away.

The jury returned a verdict of guilty on the criminal sexual assault charges. The defendant was later sentenced to four years' imprisonment. He filed a timely appeal.

## ANALYSIS

On appeal, the defendant raises seven issues for our review. He contends that (1) he was denied his constitutional right to a fair trial as a result of prosecutorial misconduct; (2) the trial court improperly

barred evidence under the rape shield statute; (3) the criminal sexual assault conviction must be reversed because the State failed to prove him guilty beyond a reasonable doubt; (4) the trial court erred in denying his motion to suppress tape recordings of conversations between him and K.M.; (5) the trial court erred in denying his motion to dismiss the indictment because the criminal sexual assault statute is unconstitutionally vague; (6) the trial court abused its discretion in ruling he was barred from presenting impeachment evidence on hearsay grounds; and (7) the statutory sentencing scheme under which he was sentenced is unconstitutional.

The defendant initially contends that he was denied his constitutional right to a fair trial as a result of prosecutorial misconduct. These alleged instances of prosecutorial misconduct include: (1) inflammatory and prejudicial remarks during closing argument; (2) improper questioning and elicitation of answers from witnesses; and (3) improper reference to the uncontroverted nature of the evidence.

We first examine the alleged inflammatory and prejudicial remarks of the prosecutor during closing argument.

■ A defendant is entitled to a fair trial free from prejudicial comments by the prosecution. *People v. Cisewski*, 144 Ill. App. 3d 597, 602 (1986). Nevertheless, a prosecutor is generally permitted great latitude in closing argument, and the determination of whether this scope is exceeded depends upon the facts and circumstances of an individual case. *Cisewski*, 144 Ill. App. 3d at 602. In determining whether a prosecutor's closing comments or arguments constitute prejudicial error, reference must be made to the content of the language used, its relation to the evidence, and the effect of the argument on the rights of the accused to a fair and impartial trial. *People v. Bivens*, 163 Ill. App. 3d 472, 482 (1987). Improper remarks made during closing argument constitute reversible error where they result in substantial prejudice to the defendant or serve no purpose except to inflame the jury. *People v. Terry*, 99 Ill. 2d 508, 517 (1984). However, arguments and statements based upon the facts in evidence, or upon reasonable inferences therefrom, are within the scope of proper argument. *Terry*, 99 Ill. 2d at 517. A new trial will not be granted unless the prosecutorial remarks are so prejudicial as to materially contribute to a defendant's conviction. *People v. Collins*, 127 Ill. App. 3d 236, 241 (1984).

■ In the case at bar, the defendant takes issue with comments made during the rebuttal closing argument by the prosecutor characterizing the defendant as someone who liked to have sexual contact with 15-year-old girls. Certain of defense counsel's objections to the comments were sustained while others were overruled. The de-

fendant argues that the remarks unfairly prejudiced the defendant and served only to inflame the jury.

We have carefully reviewed the record and each objectionable remark. We note that the trial court admonished the jury that closing arguments were not evidence. With respect to the remarks to which objections were sustained, any potential prejudice or alleged impropriety was cured when defense counsel's objections were promptly sustained and the court properly instructed the jury. *People v. Robinson*, 199 Ill. App. 3d 24, 36 (1989). With respect to the remarks to which objections were overruled, we find them to have been reasonable inferences based upon the facts in evidence and therefore to have been within the scope of proper argument. Even if we had found the remarks to have been improper, we would not find them to be so prejudicial as to have materially contributed to the defendant's conviction. See *People v. Walker*, 259 Ill. App. 3d 98, 104 (1993).

The defendant also takes issue with a comment made during the rebuttal closing argument by the prosecutor characterizing the defendant as someone who had similar inappropriate behavior with another young female, D.J. Defense counsel offered no objection to the comment. Since no objection was raised at trial, any error is waived. *People v. Lyles*, 106 Ill. 2d 373, 392 (1985).

■ We next examine the alleged improper questioning and elicitation of answers from witnesses by the prosecutor.

The defendant complains of portions of the prosecution's direct examination of K.M. and cross-examination of defense witness, Contreras. Specifically, the defendant takes issues with the prosecution's questions concerning the defendant's past sexual behavior with another female student at the karate school, D.J. The defendant argues that the introduction of evidence suggesting that the defendant had a prior unlawful relationship with D.J. was highly prejudicial, insinuating to the jury that the defendant had a propensity to commit such acts, thus requiring reversal.

Again, we have reviewed the objectionable questions and answers elicited by the prosecution. With respect to the questioning of the victim, we find any error to be waived since defense counsel made no objection thereto at trial. *Lyles*, 106 Ill. 2d at 392. As to the questioning of Contreras, we note that defense counsel's single objection during the questioning was sustained. Moreover, we do not find the objectionable question to have materially contributed to the defendant's conviction. See *Walker*, 259 Ill. App. 3d at 104.

■ We also examine the alleged improper reference by the prosecutor to the uncontroverted nature of the evidence.

During closing argument, the prosecutor referred to the defendant's having put his finger into K.M.'s vagina. He then stated that there "is absolutely uncontroverted evidence by [K.M.] that this act happened." Defense counsel's objection to the remark was overruled. The defendant now argues that this remark constituted reversible error because it was intended to direct the jury's attention to the defendant's failure to testify and to rebut K.M.'s testimony. The State argues that the issue has been waived and is without merit in any event.

As a general rule, the failure to raise an issue in a written motion for a new trial results in a waiver of that issue on appeal. *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). Having reviewed the defendant's amended motion for a new trial, we agree with the State that the defendant has failed to raise this issue below. The motion for a new trial does not specify the particular defect now raised on appeal. Accordingly, we deem this issue waived. Had we not deemed this issue waived, we would, nevertheless, resolve the issue in favor of the State.

A defendant has a constitutional right not to testify, and the prosecution is forbidden from referring either directly or indirectly to the defendant's failure to testify. *People v. Brown*, 253 Ill. App. 3d 165, 175-76 (1993). However, the prosecution may refer to the uncontradicted nature of the evidence, even where the defendant is the only person who could have contradicted the evidence. *People v. Romero*, 189 Ill. App. 3d 749, 757 (1989). The test to determine whether or not a defendant's right not to testify has been violated by prosecutorial comments is whether the remarks were calculated to draw attention to the defendant's failure to testify. *Lyles*, 106 Ill. 2d at 390.

Nothing here indicates that there was a calculated effort by the prosecutor to highlight the defendant's failure to testify. No direct reference was made to the fact that he did not testify. Furthermore, the reference to the uncontroverted nature of the testimonial evidence by K.M. was permissible and did not amount to an indirect reference to the failure of the defendant to testify.

■ The second contention of the defendant on appeal is that the trial court improperly utilized the rape shield statute to bar testimonial evidence that K.M. made prior allegations of sexual activity with other men and that such activity never occurred.

Prior to trial in the underlying action, defense counsel advised the court that he wished to impeach the victim with the testimony of certain witnesses, three witnesses who would testify that the victim told them that she had sex with three other adult men, and three witnesses (the other adult men) who would testify that they never

had sex with the victim. The State filed a motion *in limine* to prohibit this questioning. Acknowledging the defendant's right to confrontation, the trial judge noted that in prosecutions for criminal sexual assault the victim's prior sexual activity or reputation is generally inadmissible under section 115—7 of Code of Criminal Procedure of 1963. 725 ILCS 5/115—7(a) (West Supp. 1995). Finding no applicable exception to this general rule, the trial judge granted the motion *in limine*.

The rape shield statute provides that, in prosecutions for criminal sexual assault, the prior sexual activity or the reputation of the alleged victim is inadmissible except as evidence concerning the past sexual conduct of the alleged victim with the accused or when constitutionally required to be admitted. 725 ILCS 5/115—7(a) (West Supp. 1995). Here, the trial court interpreted "sexual activity or the reputation" of the alleged victim to include prior accusations by K.M. of sexual misconduct toward her by other men.

In this case, defense counsel made no representation that the complainant had engaged in previous sexual activities. Defense counsel sought only to introduce evidence of the prior allegedly false statements for impeachment purposes and advised the court of his intent. The statute clearly was not designed to preclude the admission of all evidence relating to sex. We believe that the legislature intended to exclude the *actual sexual history* of the complainant, not *prior accusations* of the complainant. Language or conversation does not constitute sexual activity. This is the same rationale utilized by the appellate court in *State v. Baron*, 58 N.C. App. 150, 292 S.E.2d 741 (1982), in determining the identical issue of whether evidence that a complainant had falsely accused others of improper sexual advances on previous occasions was admissible under a rape victim shield statute. Since there was no contention that the complainant ever engaged in sexual activity, there was no need to invoke the statute to prevent the disclosure of K.M.'s prior statements accusing others of improper sexual behavior toward her. Defense counsel should have been allowed to introduce the evidence in order to attack the credibility of the complainant.

Relying on *People v. Alexander*, 116 Ill. App. 3d 855 (1983), the prosecutor argues that the rape shield statute was properly applied to bar the subject testimonial evidence. In *Alexander*, the Appellate Court, First District, noted that, while the general rule is that a witness' credibility may not be impeached by specific acts of misconduct, other jurisdictions have made an exception where the complainant has made prior false allegations. *Alexander*, 116 Ill. App. 3d at 860. Other jurisdictions have required that either the complaining wit-

ness *admitted* the falsity of the prior charges or that the charges have been *disproved. Alexander*, 116 Ill. App. 3d at 861. We find the prosecutor's reliance on *Alexander* to be misplaced. In *Alexander*, defense counsel wanted to cross-examine the complainant concerning two prior rape charges that she had made. The complaining witness did not admit the falsity of the prior charges. Moreover, the prior accusations were not proved false. One of the prior accusations terminated in a finding of no probable cause; the other culminated in two hung juries. The hung juries indicate only that the State did not prove its case beyond a reasonable doubt. Likewise, the finding of no probable cause is silent on the reason for said finding. Conversely, the defendant in the instant case sought to specifically prove false allegations through testimony.

We grant the defendant a new trial based on the trial court's erroneous application of the rape shield statute to the facts of this case. However, we elect to address the defendant's remaining assignments of error since they are likely to arise at a retrial.

■ The third contention of the defendant on appeal is that the criminal sexual assault conviction must be reversed because the State failed to prove him guilty beyond a reasonable doubt.

The defendant was convicted of criminal sexual assault under section 12—13(a)(4) of the Criminal Code of 1961, which provides:

"The accused commits criminal sexual assault if he or she:

\* \* \*

(4) commits an act of sexual penetration with a victim who was at least 13 years of age but under 18 years of age when the act was committed and the accused was 17 years of age or over and held a position of trust, authority or supervision in relation to the victim." 720 ILCS 5/12—13(a)(4) (West 1994).

A conviction must be based upon proof beyond a reasonable doubt. *People v. Foules*, 258 Ill. App. 3d 645, 653 (1993). The reviewing court's duty is not to ask itself whether it believes the evidence establishes guilt, but whether the evidence viewed in a light most favorable to the prosecution would allow any rational trier of fact to find the essential elements of the crime proved beyond a reasonable doubt. *Foules*, 258 Ill. App. 3d at 653. A reviewing court may not substitute its judgment for that of the trier of fact on questions involving the weight of the evidence or the credibility of the witnesses. *People v. Winfield*, 113 Ill. App. 3d 818, 826 (1983). Reversal of a conviction is required only where the defendant can show that the evidence is so unsatisfactory or improbable as to create a reasonable doubt of the defendant's guilt. *People v. Murray*, 194 Ill. App. 3d 653, 656 (1990).

In the case at hand, K.M. testified that when she was 15 years old, the 38-year-old defendant inserted his finger into her vagina. The only eyewitnesses to the alleged act of penetration were K.M. and the defendant. The defendant contends that K.M.'s testimony was inconsistent and contradicted, serving to totally undermine the credibility of her testimony such that it could not be relied upon to convict him of the charged offense.

The defendant notes that the statement that K.M. gave to the investigator was inconsistent with her trial testimony concerning whether the defendant placed one or more fingers in her vagina. The defendant also notes that what K.M. told Romanow and Contreras was inconsistent with her trial testimony concerning whether she and the defendant had engaged in oral sex. While we cannot negate the existence of such inconsistencies, we find that the discrepancies were not substantial and did not detract from the reasonableness of K.M.'s testimony as a whole.

The defendant additionally argues that K.M.'s testimony was contradicted with respect to whether she and the defendant ever were alone in his office with the door closed and whether she and the defendant sat next to one another and touched underneath the table when the class went out to dinner. On the other hand, the State points to the testimony of numerous witnesses who corroborated K.M.'s accounts of graphic sexual conversations with the defendant, touching in public dining establishments, kissing while at K.M.'s home, and private meetings in the defendant's office.

Here, the outcome of the case rested upon the credibility of one of the only eyewitnesses to the act of penetration in question, K.M. It is well settled that a conviction may rest upon the testimony of a single witness, if positive and credible, even where contradicted by the accused. *Murray*, 194 Ill. App. 3d at 656. The jury, as trier of fact, was fully aware of the inconsistencies in and contradictions to K.M.'s testimony. Nevertheless, it chose to believe her version of the events leading up to and including the act of penetration. Under these circumstances, we find that a rational trier of fact could have found the defendant guilty of criminal sexual assault beyond a reasonable doubt.

A fourth contention of the defendant on appeal is that the trial court erred in denying his motion to suppress tape recordings of conversations between him and K.M. because the application for the telephonic eavesdropping order (1) was not supported by reasonable cause and (2) was unlawful.

This court has previously stated that suppression is required only where there is a failure to satisfy any of the statutory requirements

that directly and substantially implement the legislative intent to limit the use of eavesdropping procedures. *People v. Ellis*, 122 Ill. App. 3d 900, 904 (1984).

■ We first examine whether there was reasonable cause for authorization of the eavesdropping device. Section 108A—4 of the Code of Criminal Procedure of 1963 provides that a judge may authorize the use of an eavesdropping device when he finds that one party to the conversation has consented to the use of the device, there is reasonable cause for believing that an individual is committing, has committed, or is about to commit a felony, and there is reasonable cause for believing that particular conversations concerning the felony will be obtained through use of the eavesdropping device. 725 ILCS 5/108A—4 (West 1994). The term "reasonable cause" as used in the statute is established when the totality of the facts and circumstances existing at the time are sufficient to warrant the belief by a person of reasonable conscience that an offense has been, is being, or will be committed. *People v. White*, 209 Ill. App. 3d 844, 876 (1991). This court has taken the position that the application for an eavesdropping order should be viewed in a commonsense fashion, and neither proof beyond a reasonable doubt that a crime has been committed nor a *prima facie* case need be established; rather, only a probability of criminal activity need to be shown. *People v. Stewart*, 161 Ill. App. 3d 99, 105 (1987). The issuing judge's conclusions regarding the existence of reasonable cause are to be accorded great deference by subsequent judges in reviewing his actions. *Stewart*, 161 Ill. App. 3d at 105.

We have reviewed the State's application for the order authorizing use of the eavesdropping device. We find the totality of the facts and circumstances existing at the time of the application was sufficient to establish reasonable cause for believing that the defendant had committed a felony against K.M. and for believing that conversations concerning the felony would be obtained through use of the eavesdropping device.

■ We next examine whether the application for issuance of the eavesdropping device was lawful. The defendant contends that it was unlawful because it was not authorized by the State's Attorney. On the other hand, the State contends that the application was lawful because the application was authorized by an assistant State's Attorney in the absence of the State's Attorney.

Section 108A—1 of the Code of Criminal Procedure of 1963 expressly provides: "The State's Attorney may authorize an application to a circuit judge *** [for] an order authorizing or approving the use of an eavesdropping device ***." 725 ILCS 5/108A—1 (West 1994).

The defendant argues that the word "The" in the statute shows a legislative intention that only the State's Attorney can authorize application for use of an eavesdropping device. In light of the decision of the Appellate Court, First District, in *People v. Silver*, 151 Ill. App. 3d 156 (1986), we disagree. In *Silver*, the defendant offered a similar argument to that asserted now on appeal. The appellate court found the signing of the application by an assistant State's Attorney after a good-faith attempt to contact the State's Attorney to be merely a technical violation of the statute. *Silver*, 151 Ill. App. 3d at 159. Where the State's Attorney was unavailable, the appellate court refused to find that such a technical violation undermined the purpose of the statute, which is to protect individual privacy against unwarranted invasions. *Silver*, 151 Ill. App. 3d at 159.

In the case at hand, an assistant State's Attorney signed the authorization for application and order approving use of the eavesdropping device. While the assistant State's Attorney erroneously signed his name on the signature line for the State's Attorney rather than in the space below, the authorization expressly states that the signature was in the absence of the State's Attorney. Since the State's Attorney was unavailable, we find the signing of the application by an assistant State's Attorney to have been merely a technical violation of the statute.

■ The fifth contention of the defendant on appeal is that the trial court erred in denying his motion to dismiss the indictment because the criminal sexual assault statute is unconstitutionally vague, resulting in a denial of due process.

The defendant first maintains that section 12—13(a)(4) of the Criminal Code of 1961 (720 ILCS 5/12—13(a)(4) (West 1994)) is so vague it renders the statute unconstitutional in general. We disagree.

When a penal statute that does not involve first amendment freedoms is challenged as unconstitutionally vague on its face, courts will invalidate the statute only if no standard of conduct is specified at all. *Smith v. Goguen*, 415 U.S. 566, 578, 39 L. Ed. 2d 605, 614-15, 94 S. Ct. 1242, 1249-50 (1974); *People v. Taylor*, 138 Ill. 2d 204, 211 (1990). In other words, to sustain a facial challenge, the defendant must demonstrate that the law is incapable of any valid application. *People v. Haywood*, 118 Ill. 2d 263, 270 (1987).

In this case, the defendant does not contend that section 12—13(a)(4) infringes upon any right protected by the first amendment, nor do we discern any such infringement. We must therefore consider whether the statute is capable of any valid application. In *People v. Secor*, 279 Ill. App. 3d 389 (1996), the Appellate Court, Third District,

faced a similar challenge to the general constitutionality of section 12—13(a)(4) on vagueness grounds. It found the application of the statute to be unquestioned in circumstances such as those involving baby sitters, teachers, day-care workers, priests and ministers, scout leaders and a host of other positions of trust, authority or supervision. *Secor*, 279 Ill. App. 3d at 395. Accordingly, it did not find the statute facially invalid. In keeping with that decision, we do not find the statute to be unconstitutionally vague on its face.

The defendant further maintains that section 12—13(a)(4) is unconstitutional as applied to him in the present case. Again, we disagree.

Under section 12—13(a)(4), the State is required to prove that the defendant "held a position of trust, authority or supervision in relation to the victim" when committing an act of sexual penetration. 720 ILCS 5/12—13(a)(4) (West 1994). The indictment in this case charged that defendant "held, as a [k]arate instructor of [K.M.], a position of supervision in relation to [K.M.]." The defendant claims that the term "supervision" as utilized in the statute is vague and undefined; thus, it fails to give fair notice of what conduct is prohibited and provides no standards to guide police, judges, and juries in determining when the statute is violated.

Statutes enjoy a presumption of constitutionality. *People v. Caffrey*, 97 Ill. 2d 526, 530 (1983). Due process does not require impossible levels of specificity; instead, a statute must convey sufficiently definite warnings that can be understood when measured by common understanding and practice. *Secor*, 279 Ill. App. 3d at 395-96.

Here, the defendant correctly points out that the term "supervision" is not defined in the statute. However, undefined words in a statute are presumed to have their ordinary and popularly understood meanings. *People v. Anderson*, 148 Ill. 2d 15, 28 (1992). In denying the defendant's motion to dismiss the indictment, the trial judge stated, "I think the cases are quite clear that supervision has a meaning that everybody can understand." Indeed, "supervision" has been defined as involving the act of overseeing or inspection. *Secor*, 279 Ill. App. 3d at 396. Moreover, in arguments on the defendant's original motion to dismiss the indictment, defense counsel acknowledged that "supervision is something that can be [objectively] determined." We believe the term is sufficiently definite to warn a defendant of the type of conduct that is prohibited and to channel the discretion of police, judges, and juries. See *Secor*, 279 Ill. App. 3d at 396. We find that section 12—13(a)(4) is not unconstitutionally vague as applied to this defendant.

■ A sixth contention of the defendant on appeal is that the

trial court abused its discretion in ruling he was barred from presenting impeachment evidence on hearsay grounds.

The admission of evidence is within the sound discretion of the trial court, and its ruling should not be reversed absent a clear showing of abuse of that discretion. *People v. McCarthy*, 213 Ill. App. 3d 873, 881 (1991).

In the case at hand, defense counsel called Robert Holguin, investigator with the Du Page County Children's Center, as a defense witness. Holguin's investigation of the charges against the defendant led to the defendant's eventual indictment. Holguin testified that he interviewed K.M. and several others. When asked whether during the course of his interviews with K.M. she had ever given him different versions of the events that had transpired between K.M. and the defendant, he replied in the negative. Defense counsel next called the defendant's wife to the stand. In an offer of proof, defense counsel informed the court that he would seek to elicit testimony from the defendant's wife that Holguin previously had told her that he could not get the same story twice out of K.M. Defense counsel also informed the court that it could offer similar testimony from another witness previously called on behalf of the defendant. The State objected to the proposed line of questioning directed at the defendant's wife on hearsay grounds. The State argued that defense counsel was seeking to get into evidence a statement allegedly made by Holguin characterizing K.M. as a liar under the guise of impeachment of Holguin. The trial court sustained the State's objection to the line of questioning.

Supreme Court Rule 238(a) provides that the credibility of a witness may be attacked by any party, including the party calling the witness. 134 Ill. 2d R. 238(a). As a general rule, such an attack may be accomplished by impeaching the witness with evidence of a prior inconsistent statement. *People v. Cruz*, 162 Ill. 2d 314, 358 (1994). The defendant argues that the trial court improperly prevented the impeachment of Holguin by prior inconsistent statements allegedly made to two defense witnesses.

Hearsay is an out-of-court statement offered to prove the truth of the matter asserted and is generally inadmissible unless it falls within an exception to the rule. *Laughlin v. France*, 241 Ill. App. 3d 185, 192 (1993). In criminal cases, evidence of a statement made by a witness is not made inadmissible by the hearsay rule if (1) it is inconsistent with the witness' trial testimony; (2) the witness is subject to cross-examination at trial; (3) the statement explains an event within the personal knowledge of the witness; and (4) the witness acknowledged at trial that he had made the prior inconsistent statement. *People v. Coleman*, 187 Ill. App. 3d 541, 547 (1989).

In this case, the prior statements alleged to have been by Holguin were being offered not simply to impeach Holguin but to prove the truth of the matter asserted, that K.M. was lying about her version of the events in question. The alleged prior statements are made inadmissible by the hearsay rule because at trial Holguin denied having made the statements. We find the trial court did not abuse its discretion in barring introduction of the statements.

██ The final contention of the defendant on appeal is that the statutory sentencing scheme under which he was sentenced is unconstitutional.

A statute has a strong presumption of constitutionality, and the burden of showing its invalidity is on the party challenging the enactment. *People v. La Pointe*, 88 Ill. 2d 482, 499 (1981).

The defendant first contends that section 5—5—3 of the Unified Code of Corrections (730 ILCS 5/5—5—3(c)(2)(H), (e) (West Supp. 1995)) is unconstitutional because it violates the proscription against disproportionality.

Courts are reluctant to invalidate penalties set by the legislature. *People v. Bryant*, 128 Ill. 2d 448, 456 (1989). The constitutional guarantee of proportionate penalties is violated where the penalty prescribed for an offense is greater than the penalty prescribed for a more serious offense. *People v. Tucker*, 264 Ill. App. 3d 923, 925 (1994). Legislative judgment will be interfered with only if the punishment is cruel, degrading, or so wholly disproportionate to the offense committed as to shock the moral sense of the community. *People v. McGee*, 257 Ill. App. 3d 229, 235-36 (1993), citing *People v. Gonzales*, 25 Ill. 2d 235, 240 (1962).

Here, the defendant received a mandatory four-year term of imprisonment for the criminal sexual assault conviction. The defendant argues that the sentencing scheme is disproportionate to the nature of the offense. We note that the defendant does not argue, as is commonly done in cases involving claims of disproportionality, that the offense for which he was punished resulted in a sentence which is more severe than that imposed for a greater offense. Focusing solely then on the penalty for criminal sexual assault of a minor, while we acknowledge that a mandatory sentence of four years' imprisonment is a strong penalty, we cannot say that the penalty fixed in this case is disproportionate to the nature of the offense.

The defendant also contends that section 5—5—3 of the Unified Code of Corrections (730 ILCS 5/5—5—3(c)(2)(H), (e) (West Supp. 1995)) is unconstitutional because it deprives him of equal protection. Under subsection (c)(2)(H) of the statute in question, criminal sexual assault is a nonprobational offense unless the offender meets the

criteria of subsection (e) and "was a family member of the victim at the time of the commission of the offense." 730 ILCS 5/5---5—3(c)(2)(H), (e) (West Supp. 1995). Section 12—12 of the Criminal Code of 1961 defines family member as "a parent, grandparent, or child, whether by whole blood, half-blood or adoption and includes a step-grandparent, step-parent or step-child *** [or], where the victim is a child under 18 years of age, an accused who has resided in the household with such child continuously for at least one year." 720 ILCS 5/12—12(c) (West 1994).

In the present case, the defendant argues that his right to equal protection is violated by this statute because it prohibits him from probation as a nonfamily member of the victim, but it allows probation for the criminal sexual assault offender who is a family member of the victim.

The equal protection clauses of the United States and Illinois Constitutions do not guarantee that all persons will be treated equally; they require only that there be a rational basis for a legislative classification that differentiates between persons similarly situated. *People v. Blackorby*, 146 Ill. 2d 307, 318 (1992). If any set of facts may be reasonably conceived that would justify the classification by the State, it must be upheld. *People v. McCabe*, 49 Ill. 2d 338, 340-41 (1971); *People v. Toliver*, 251 Ill. App. 3d 1092, 1099 (1993).

We therefore must determine whether any rational basis exists to justify the allowance of probation for the criminal sexual assault offender who is a family member of the victim as contrasted to the outright denial of probation for the nonfamily member offender. In *People v. Robertson*, 168 Ill. App. 3d 132 (1988), the Appellate Court, First District, faced a similar challenge to the constitutionality of section 5—5—3 on equal protection grounds. The court determined that a rational basis for the statute could be the legislature's determination that probation should be offered as an alternative where the sexual offense has occurred within the family unit in an effort to keep the family intact and minimize the disruption to the other members. *Robertson*, 168 Ill. App. 3d at 137. In *People v. Madura*, 257 Ill. App. 3d 735, 739 (1994), this court recognized that subsection 5—5—3(e) was designed to allow latitude to the trial court in considering the impact upon the child of a sentence against a family member. We find such latitude important even where the offender is simply a person who has continuously resided in the victim's household for at least one year.

We conclude that section 5—5—3 of the Unified Code of Corrections (730 ILCS 5/5—5—3(c)(2)(H), (e) (West Supp. 1995)) is constitutional and does not violate defendant's right to equal protection.

## CONCLUSION

For the foregoing reasons, we reverse the defendant's conviction, and the cause is remanded for a new trial.

Reversed and remanded.

McLAREN, P.J., and BOWMAN, J., concur.