STATE of Missouri, Respondent,

v.

Myron W. RAINES, Appellant.

No. WD 61366.

Missouri Court of Appeals, Western District.

Sept. 9, 2003.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 28, 2003.

Craig E. Hellmann, Washington, MO, for Appellant.

John M. Morris, III, Anne E. Edgington, Co–Counsel, Jefferson City, MO, for Respondent.

Before LOWENSTEIN, P.J., SMART and EDWIN H. SMITH, JJ.

HAROLD L. LOWENSTEIN, Judge.

This appeal requires this court to determine whether a criminal defendant charged with rape is entitled under the Confrontation Clause to cross-examine the putative victim about her alleged prior false allegations of rape solely to show that she has a propensity to lie. Appellant Raines, who was convicted of two counts of forcible rape, Section 566.030, RSMo. (1999),[1] and one count of assault in the second degree, Section 565.060, argues that he does have such a right and that the rape shield statute, Section 491.015, RSMo. (2000), does not prohibit his inquiry into the prosecutrix's false *allegations* of rape.

The trial court held to the contrary regarding the latter, not reaching the constitutional issue. Thus, Raines contends his convictions must be set aside. This court disagrees. Although rape shield statute does not cover Raines' proposed cross-examination of the victim, there was no Confrontation Clause violation.

## I. FACTS

The facts in this case are relatively straightforward. The State charged Raines with recklessly causing serious physical injury to and forcibly raping A.E., a twenty-two year-old woman. A.E. testified that in the evening of August 29, 1999, she met Raines (whom she had dated when she was 16) at a strip club in Sedalia. Raines told A.E. that he wanted to get some alcohol and "party" with her. A.E., married, but separated from her husband, said that she "wasn't there to get laid." Raines persuaded A.E. to give him a ride to his truck, where at about 12:30 a.m. A.E. agreed to follow Raines to a place where they could "talk about old times." *En route,* A.E. ran her car into a ditch, because her vision had been obstructed by dust kicked-up by Raines truck. A.E. then drove her car to a gas station to determine the extent of damage to her car. Raines told her that he thought the car was fine, and the two resumed their trip, which ended at Hughesville, Missouri.

A.E. testified that it was in the park that Raines viciously and repeatedly raped and assaulted her. According to A.E., the two went on a walk around a pond in Hughesville Park, during which Raines asked to kiss her. A.E. refused. They then stopped at a tree that hung over part of the pond. Again, Raines asked for a kiss. A.E. refused. Undeterred, Raines said he wanted a kiss, grabbed A.E. by the shoul-

---

1. Unless indicated otherwise, all statutory references are to RSMo. (1999).

ders, and forced his lips on her. She pushed him away and told him to back off because she couldn't breathe. Raines then tackled A.E., put his hand over her mouth, and told her to "take off your fucking clothes." A.E. was "scared to death." Raines then told A.E., "If you run, I'm going to kill you."

Afraid that Raines was indeed going to kill her, A.E. complied with all of Raines demands. Raines had intercourse with her, holding her by her shoulders so that she could not move. He demanded that she say that she loved him. When she did not say it loud enough for him, Raines hit her on the head repeatedly, causing her to see a bright light and hear ringing in her ears. A.E. loudly prayed for God to help her. She grabbed Raines head and threw him off her, and ran into the pond to get away from him. She took off her shirt to swim.

Raines started walking toward his truck, stopped, turned around, walked to the edge of the pond, and grabbed A.E.'s head, shoving it under water and holding it there for a few seconds. After pulling her head out of the water, he commanded her to fellate him. She refused. He forced her head under water, pulled her head out of the water, and when he let her up he then forced his penis into her mouth. He then pulled her up the bank by her hair near where their vehicles were parked. He had intercourse with her and attempted to have anal intercourse with her. After this, Raines said he was tired and started walking away, but then came back and had intercourse with her again and also stuck his fingers in her vagina. Once again, he walked away, came back, and told A.E. that he wanted to "fuck [her] over the back of [her] car." A.E. pushed Raines away and got in her car, but Raines tried to pull her out of the car by her hair. To extricate herself from his grasp, she slammed the car door on his leg, after which he said, "Fine, I'm done with you anyway, you bitch."

Covered in mud, her scalp numb, having trouble seeing out of her left eye, unable to hear out of her left ear, and feeling great pain in her genitalia, A.E. drove to the Pettis County Sheriff's Department. She honked her horn. A deputy came out to help her. A.E. told the deputy that she had been raped. She was interviewed and then taken to the Bothwell Regional Health Center where she was admitted and stayed three days. Registered Nurse Candace Smith, who had treated A.E. in the emergency room and had taken her medical history, testified that A.E.'s hair was wet and there were clumps of grass and dirt in her hair and on her body; that her left eye was swollen and bruised, the white part of the left eye being red; that her left ear was red; that the left side of her head had a bruised knot; and that her body was scratched and bruised everywhere, with injuries to her knees and back, and bruising of her genitalia. Dr. Dale Chapman, who had treated A.E. the morning after she was admitted to the hospital, testified that there was a lot of bruising on her face and on the side of her head and that she had significant swelling and acute bruising in the region of her face around her left eye. Dr. Chapman also concluded that the tympanic membrane in her left ear was ruptured. Her left ear was very bloody. She suffered a permanent partial loss of hearing in that ear. Only a "lot of trauma" could have caused the injuries A.E. exhibited, according to Dr. Chapman.

Before trial, the State filed a motion *in limine* relying on Missouri's rape shield statute, Section 491.015, RSMo. (2000), to prohibit Raines from "commenting on, arguing, introducing evidence of any matter relating to any prior sexual conduct of the alleged victim...." In response, Raines

filed a "motion pursuant to Section 491.015 R.S.Mo. [*sic*]," seeking to admit evidence of A.E.'s "prior sexual conduct," namely, two prior false allegations of rape. The trial court granted the State's and denied Raines' motion around four months after Raines had filed his original motion. Raines moved the court to reconsider his motion, arguing that the rape shield statute did not apply because a prior false allegation of sexual conduct was not itself sexual conduct.

Raines referred to two supposedly false allegations of rape made by A.E. in both of his motions. The first, Raines claimed, was made when A.E. was 16 1/2 years old, when she provided a statement to the Pettis County Sheriff's Department in which she said that a man had raped her. A few days after making her statement, she wrote a note to the man expressing affection for him and saying that she had never "used a guy in that way before." There was no express mention of her statement to the Sheriff's Department. The second putatively false allegation was that A.E.'s husband at the time had raped and sexually assaulted her, which she made in a deposition and interrogatory relating to her dissolution action against her husband. Raines claimed that to his "knowledge, information[,] and belief," A.E. never filed a complaint against her husband with the police, and no charges were ever filed against him. Raines did not claim—and nothing in the record even hinted—that A.E. ever recanted this second allegation.

During his trial, Raines did not make an offer of proof of the relevancy of the testimony regarding these two prior allegations.

Raines was sentenced to five years for the assault and ten years on each rape count, to be served concurrently, and consecutive to the assault count. In Raines' motion for new trial, he states the court erred in overruling his motions pursuant to Section 491.015 to present evidence of the two prior allegations, which were relevant to the issue of her reliability and credibility. In his motion, he admits he was not attempting to present evidence of her prior sexual conduct and the statute should not exclude "evidence of her false statements."

On appeal, Raines raises two points: (1) there was insufficient evidence to convict the defendant of either offense; and (2) that the trial court denied his Sixth Amendment right to confront his accusers by misapplying the rape shield statute and not allowing him to cross examine A.E. as to alleged false accusations of rape made by her against other men.

## II. STANDARD OF REVIEW

In reviewing a challenge to the sufficiency of the evidence, this court must accept as true all evidence favorable to the verdict and all reasonable inferences therefrom, ignoring all evidence and inferences that undermine the verdict. *State v. Goudeau*, 85 S.W.3d 126, 127 (Mo.App.2002). Here, the jury could believe all, none, or some of a witness's testimony. *State v. Rose*, 86 S.W.3d 90, 105 (Mo.App.2002). Trial courts have broad discretion to admit or exclude evidence, and review is for an abuse of discretion. *State v. Mayes*, 63 S.W.3d 615, 627 (Mo. banc 2001). An abuse of discretion exists when the trial court's decision is clearly against the logic of the circumstances before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration. *State v. Christeson*, 50 S.W.3d 251, 261 (Mo. banc 2001). If reasonable persons can disagree about the propriety of the trial court's decision, the trial court did not abuse its discretion. *State v. Broussard*, 57 S.W.3d 902, 911 (Mo.App.2001).

### III. ANALYSIS

**A.**

■ In Raines' first point, he argues that the trial court erred in denying his motion for a directed verdict and his motion for a J.N.O.V. because there was insufficient evidence for the jury to find, beyond a reasonable doubt, that he had caused A.E. to suffer a "serious physical injury." This point is without merit. As the State points out, "serious physical injury" is not an element of the crime of forcible rape, which only requires proof that the defendant "has sexual intercourse with another person by the use of forcible compulsion." § 566.030.1. While the verdict directors in this case listed "serious physical injury" as an element the jury must find beyond a reasonable doubt, Raines has not argued on appeal that this estops the State from denying that harmful physical injury is an element of forcible rape. In any event, as argued below, Raines did in fact inflict serious physical injury on A.E.

■ "A person commits the crime of assault in the second degree if he ... recklessly causes serious physical injury to another person." § 565.060.1(3) "Physical injury" means "physical pain, illness, or any impairment of physical condition," § 556.061(20), and "serious physical injury" means "physical injury that creates a substantial risk of death or that causes serious disfigurement or protracted loss or impairment of the function of any part of the body." §§ 565.002(6); 556.061(28).

Raines argues that there was no evidence from which the jury could find beyond reasonable doubt that he seriously disfigured A.E., that he had exposed her to a substantial risk of death, or that he had caused protracted loss or impairment of the function of any part of A.E.'s body. He is wrong.

(1) Raines hit A.E. over twenty-five times in the head, which caused severe bruising on the left side of her face and around one of her eyes. This is enough to prove that he caused A.E. physical pain, that is, "physical injury," that created a substantial risk of death, that is, "serious physical injury." As Dr. Chapman testified, the rupturing of A.E.'s tympanic membrane, evidenced by A.E.'s hearing loss, must have been caused by trauma. That creates a strong inference, which this court must accept as true, that Raines' punches were trauma inducing. Add to all this Raines' holding A.E.'s head underwater and that he forced intercourse from her at least five separate times—all this indicates that the jury could have concluded that Raines' was not just trying to force sex from A.E., but also trying to cause grievous harm to her, perhaps even trying to kill her.

(2) The rupturing of A.E.'s tympanic membrane was also protracted loss or impairment of the function of A.E.'s ear. " 'Protracted' means something short of permanent but more than of a short duration." *State v. Ross,* 939 S.W.2d 15, 18 (Mo.App.1997). The rupturing of the tympanic membrane in A.E.'s left ear caused her hearing loss, loss that extended, at a minimum, from the termination of Raines' attack on A.E. until Dr. Chapman had treated her. (Without any reference to the transcript, the State claims that A.E. needed additional follow up treatment, after her hospital visit, to treat her hearing problem.) Given Dr. Chapman's testimony that the puncture was caused by trauma, the jury could have reasonably concluded that the damage to the ear was of a long duration.

(3) There was also ample evidence that Raines had seriously disfigured A.E., meaning "deface[d] or mar[red] the appearance or beauty of [A.E.]" *State v. Im-*

*mekus,* 28 S.W.3d 421, 427 (Mo.App.2000). As a result of Raines' attack, A.E. was smeared with mud and grass and had extensive swelling, bruising, and scratching around the head. That A.E. was seriously disfigured follows *a fortiori* from *Immekus,* in which this court held that the defendant's cutting of the victim's long hair so that it was one-and-one-half inches long in combination with the shaving of her eyebrows qualified as serious disfigurement. *Id.* Point denied.

▉▉▉ Raines' second point on appeal is that the trial court violated his rights under the Sixth Amendment's Confrontation Clause [2] by granting the State's motion *in limine,* which precluded Raines from both cross-examining A.E. about and introducing extrinsic evidence of her prior false accusations. It contends that the point was not preserved because he did not make an offer of proof to establish the relevancy of A.E.'s past allegations of rape. In general, when a trial court has granted a motion *in limine* to exclude evidence, the proponent thereof must (a) attempt to admit the evidence and (b) make an offer of proof to preserve the issue for appellate review, *State v. Purlee,* 839 S.W.2d 584, 592 (Mo. banc 1992), for "[a] trial court's ruling on a motion in limine is interlocutory only and subject to change during the trial[.]" *State v. Dowell,* 25 S.W.3d 594, 601 (Mo.App.2000). An offer of proof has three components: what the evidence will be, the purpose and object of the evidence, and each fact essential to establishing the admissibility of the evidence. *Terry v. Mossie,* 59 S.W.3d 611, 612 (Mo.App.2001). The purpose of this requirement is:

to make certain that the trial court and opposing counsel understand what evidence is being offered and its relevancy and materiality. It follows that the reason for a formal offer of proof does not exist if the trial court and counsel by other mean[s] are sufficiently advised as to what the testimony of the witness will probably be if he is allowed to testify.

*State ex rel. State Highway Comm'n v. Northeast Bldg. Co.,* 421 S.W.2d 297, 300 (Mo.1967). "Where it is clearly evident ... what the testimony of the witness probably will be if he is allowed to testify, no formal offer of proof is necessary, and the question of his rejection as a witness is open for review on appeal." *Wahl v. Cunningham,* 320 Mo. 57, 6 S.W.2d 576, 587 (Mo. banc 1928); *Reno v. Wakeman,* 869 S.W.2d 219, 225 (Mo.App.1993). *See also City of Kansas City v. Johnson,* 679 S.W.2d 328, 332 (Mo.App.1984).

▉▉▉ While Raines did not make a formal offer of proof, his motion to reconsider did explain what the evidence was to be—two prior false allegations of rape by A.E.; the purpose and object of the evidence—to undermine A.E.'s credibility and to prove A.E. has made a pattern of false claims of rape; and the basis for the admissibility of the evidence—cases holding that the rape shield statute was inapplicable. Both the State and the trial court were well aware of the reasons Raines gave why he should have been allowed to cross-examine A.E. about her previous claims of rape. Nevertheless, because Raines never attempted to cross-examine A.E. about her (allegedly false) prior allegations of rape and because the trial court's ruling on the State's motion *in limine* was interlocutory, *State v.*

---

**2.** Raines has not argued that the trial court violated Missouri's analogue to the Confrontation Clause, Article 1, section 18(a) of the Missouri Constitution. The protections provided by Section 18(a) are coextensive with those of the Sixth Amendment. *State v. Hester,* 801 S.W.2d 695, 697 (Mo. banc 1991). Nor has Raines argued that the trial court's decision was inconsistent with the rules of evidence.

*Rose,* 86 S.W.3d 90, 95 (Mo.App.2002), Raines has not preserved this argument for ordinary review, leaving available only plain error review. Rule 30.20.

■ Raines first claims that the trial court erred in concluding that the rape shield statute, section 491.015, RSMo. (2000), required it to bar any cross-examination about A.E.'s past false allegations of rape. (He has not argued that the evidence was otherwise admissible, except as required by the Confrontation Clause.) Raines is correct. As applicable here, the rape shield statute renders inadmissible "evidence of specific instances of the complaining witness' *prior sexual conduct* or the absence of such instances or conduct" in prosecutions under Chapter 566 e.g., prosecution for violating Section 566.030, the statute Raines was charged with violating. § 491.015.1. (emphasis added). "Sexual conduct" means "sexual intercourse, deviate sexual intercourse or sexual conduct." § 566.010(2). "Evidence of a victim's prior complaints, as opposed to prior sexual conduct, does not fall within the ambit of section 491.015." *State v. Scott,* 78 S.W.3d 806, 810 (Mo.App.2002) (citing *State v. Montgomery,* 901 S.W.2d 255, 256 (Mo.App.1995)).[3] (Since the rape shield was inapplicable, Section 491.015(3)'s offer of proof requirement was inapplicable, too.)

■ There was a basis, under the rules of evidence, for the trial court to deny Raines' motions, namely, that they were too broad. In the first, he sought leave "to allow him to inquire and present evidence of [A.E.'s] prior sexual conduct," and, in the second, "to inquire and present evidence of [A.E.'s] false statements of prior sexual assault." In general, a party may inquire of specific acts of misconduct not resulting in conviction (i.e., prior bad acts) on cross if they relate to the credibility of the witness, but these prior bad acts may not be proved by extrinsic evidence. *Rousan v. State,* 48 S.W.3d 576, 590 (Mo. banc 2001). Given the overbreadth of his motions—neither of which was limited to cross examination—the trial court did not abuse its discretion in denying them.

■ The question remains, however, leaving aside the problems with Raines position under the ordinary rules of evidence: Did the Confrontation Clause require the trial court to allow Raines to cross-examine A.E. about her allegedly false allegations of rape? It did not. The Confrontation Clause, applicable to the states *via* incorporation into the Fourteenth Amendment, *Pointer v. Texas,* 380 U.S. 400, 403, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965), guarantees a defendant the right to "confront witnesses against him," meaning to conduct reasonable cross-examination. *Davis v. Alaska,* 415 U.S. 308, 315–16, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). The Supreme Court has never "held—or even suggested—that the longstanding rules restricting the use of specific instances and extrinsic evidence to impeach a witness's credibility pose consti-

---

**3.** Of the states to consider whether their rape shield statutes bar evidence of prior false allegations of rape, the vast majority have reached the same conclusion. *See Booker v. State,* 334 Ark. 434, 976 S.W.2d 918, 919 (1998); *Smith v. State,* 259 Ga. 135, 377 S.E.2d 158, 160 (1989); *State v. West,* 95 Hawai'i 452, 24 P.3d 648, 654 (Haw.2001); *People v. Grano,* 286 Ill.App.3d 278, 288, 221 Ill.Dec. 727, 676 N.E.2d 248 (1996); *State v.* *Walton,* 715 N.E.2d 824, 826 (Ind.1999); *State v. Smith,* 743 So.2d 199, 202–03 (La. 1999); *Miller v. State,* 105 Nev. 497, 779 P.2d 87, 89 (1999); *State v. Bray,* 356 N.J.Super. 485, 813 A.2d 571, 577 (2003); *State v. Thompson,* 139 N.C.App. 299, 533 S.E.2d 834, 841 (2000); *State v. Martin,* 984 P.2d 975, 979 (Utah 1999); *State v. Quinn,* 200 W.Va. 432, 490 S.E.2d 34, 40 (1997).

tutional problems." *Hogan v. Hanks,* 97 F.3d 189, 191 (7th Cir.1996).

 Even if Raines' motion should be narrowly interpreted merely as a request to cross examine A.E. about her prior false allegations, this court must reject Raines' point. While the Supreme Court has held that the Confrontation Clause confers a right to cross-examine witnesses to expose bias or a motive to fabricate, *Olden v. Kentucky,* 488 U.S. 227, 231, 109 S.Ct. 480, 102 L.Ed.2d 513 (1988), it has never held that there is a right to cross-examine witnesses to prove that they have lied in the past and thus have a propensity to lie. *Redmond v. Kingston,* 240 F.3d 590, 593 (7th Cir.2001). In fact, it has suggested that the contrary is the case. In *Davis v. Alaska,* the Court specifically distinguished between an attack on a witness's general credibility and one directed toward "revealing possible biases, prejudices, or ulterior motions of the witness as they may relate directly to issues or personalities in the case at hand." 415 U.S. at 316, 94 S.Ct. 1105. *See also Lewis v. Wilkinson,* 307 F.3d 413, 419 (6th Cir.2002). Justice Stewart, in his concurrence in *Davis v. Alaska,* stated that, "I would emphasize that the Court neither holds nor suggests that the Constitution confers a right in every case to impeach the general credibility of a witness through cross-examination about his past delinquency adjudications or criminal convictions." 415 U.S. at 321, 94 S.Ct. 1105. The Fourth Circuit has explained why there is such a limitation on attempts to undermine a witness's general credibility:

> The distinction between impeachment evidence proving bias and impeachment of general credibility is important because generally applicable evidentiary rules limit inquiry into specific instances of conduct through the use of extrinsic evidence and through cross-examination

with respect to general credibility attacks, but no such limit applies to credibility attacks based on motive or bias. *United States v. Hill,* 322 F.3d 301, 304 (4th Cir.2003). citing *Quinn v. Haynes,* 234 F.3d 837, 845 (4th Cir.2000). *See also State v. Shaw,* 839 S.W.2d 30, 33 (Mo.App. 1992) (acknowledging that under *Davis v. Alaska,* a defendant "may be prohibited" from using past convictions to discredit the general credibility of a witness).

The Eighth Circuit, as well as the majority of federal appellate courts that have addressed this issue, has held that a trial court does not violate the Confrontation Clause by prohibiting a defendant from cross-examining a witness where the sole purpose of the cross examination is to prove that the witness's tendency to lie, based on a pattern of past lies. *Id.* Boggs *v. Collins,* 226 F.3d 728, 740 (6th Cir.2000) ("Under *Davis* and its progeny, the Sixth Amendment only compels cross examination if that examination aims to reveal the motive, bias[,] or prejudice of a witness/accuser."); *Quinn v. Haynes,* 234 F.3d 837, 845 (4th Cir.2000); *United States v. Bartlett,* 856 F.2d 1071, 1089 (8th Cir.1988); *Hughes v. Raines,* 641 F.2d 790, 793 (9th Cir.1981). *See also Erlich v. Trombley,* No. 01–CV–73626–DT, 2002 WL 31545999, at * 6 (E.D.Mich. Oct.24, 2002); *State v. Wyrick,* 62 S.W.3d 751, 785 (Tenn.Crim. App.2001). *But see Lawrence v. United States,* 482 A.2d 374, 377 (D.C.1984). In his two page brief covering this point, Raines has not given this court a reason to ignore the overwhelming weight of authority against his position.

 Trial courts have broad discretion in limiting the scope of cross-examination. *State v. Dunn,* 817 S.W.2d 241, 245 (Mo. banc 1991). Among the reasons for permitting trial judges wide latitude for the purpose of imposing reasonable limits on cross-examination are concerns about

prejudice, confusion of the issues, and interrogation that is only marginally relevant. Under the Confrontation Clause, "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on ... cross examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall,* 475 U.S. 673, 679, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). Here, the trial court could have reasonably concluded that A.E. had never falsely accused anyone of rape and, thus, that any cross-examination of the A.E. about them would merely confuse the jury. The trial court did not abuse its discretion in concluding that the defendant did not meet his burden to substantiate the falsity of A.E.'s prior allegations. The record does not indicate that A.E. ever recanted her claim that her then—husband had raped her. That charges were never filed against him does not mean the charge was false, for there are many reasons rape charges might not be filed, including, e.g., that the prosecutor declined to pursue the charges. The letter A.E. wrote to her alleged rapist did not recant her allegation, either—at least not directly. In the letter, she apologizes, stating that she had never "used a guy in that way before." A fair reading is that she was referring to a false allegation, made a few days earlier, but the context is far from clear. And Raines did not attempt to have the supposedly falsely accused victim testify in his offer to substantiate the claim that A.E. had falsely accused him of rape. This court cannot say that the trial court's barring Raines from cross-examining A.E. about a single, dated, and perhaps-not-false allegation was beyond the bounds of reason. *See United States v. Crowley,* 318 F.3d 401, 416–17 (2nd Cir.2003).

The only federal appellate court to conclude that the Confrontation Clause gives defendants a right to cross-examine a witness about prior false allegations of rape solely to undermine the witness's general credibility requires defendants to "convincingly" prove that the prior allegations were false. *See Velasquez v. United States,* 801 A.2d 72, 80 (D.C.2002). The handful of state courts that allow inquiry on cross about prior false allegations of rape (though not necessarily because of the Confrontation Clause) have similar requirements. In Virginia, for instance, the defendant must make a showing that there is a reasonable probability that the accusations were false. *Clinebell v. Commonwealth,* 235 Va. 319, 325, 368 S.E.2d 263 (1988). In Indiana, the defendant must prove that they were demonstrably false. *Little v. State,* Ind.App., 413 N.E.2d 639 (1980). As noted before, Raines did not satisfy any of these threshold requirements.

As stated earlier, this point is examined under plain error, Rule 30.20. Raines, therefore, bore the burden of showing that as a result of the trial court's action there was a resulting manifest injustice or a miscarriage of justice.

When the evidence of guilt is established by overwhelming evidence, and there is no constitutional violation, no manifest injustice or miscarriage of justice results, which would require relief under plain error. *State v. Williams,* 9 S.W.3d 3, 12–13 (Mo. App.1999). The evidence of guilt of the defendant in the case at bar was overwhelming: the extensive injuries over the victims body, her appearance just after the alleged occurrence at the sheriff's department in Sedalia, and the defendant's rather flimsy explanation of her injuries, would not have been overcome by a cross examination which might have shown she had made earlier false accusations, later re-

canted, of having been raped. This point is denied.

The judgment of the trial court is affirmed.

All concur.