

# In the
# Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Respondent, | ) | **WD84246** |
| | ) | |
| v. | ) | **OPINION FILED: September 6, 2022** |
| | ) | |
| CHARLES H. PUTFARK, IV, | ) | |
| | ) | |
| Appellant. | ) | |

**Appeal from the Circuit Court of Pettis County, Missouri**
The Honorable Robert Lawrence Koffman, Judge

Before Division Three:  Gary D. Witt, Presiding Judge, Anthony Rex Gabbert, Judge and
W. Douglas Thomson, Judge

Charles Putfark ("Putfark") appeals from his convictions, following a jury trial in

the Circuit Court of Pettis County ("trial court"), of two counts of statutory sodomy in the

first degree, section 566.062;[1] three counts of child molestation in the first degree, section

566.067; and one count of sexual misconduct involving a child, section 566.083.  On

appeal, Putfark argues:  (1) the trial court erred in sentencing Putfark on counts III and IV

of child molestation in the first degree because each is a lesser-included offense of statutory

---

[1] All statutory references are to the Revised Statutes of Missouri (2016), as in effect at the time of the offenses in 2017, unless otherwise indicated.

sodomy for which he was convicted under Counts I and II, and his sentences for both offenses violates the double jeopardy clause of the United States Constitution, U.S. Const. amends. V, XIV, and section 556.041; (2) the trial court erred in preventing cross-examination regarding the taking of a sex toy from the victim's mother's room because the discovery of the sex toy was not prohibited under rape shield statute, section 491.015, the wholesale exclusion of witness bias or potential fabrication is not allowed, and the exclusion of this evidence violated Putfark's right to confront his accuser under the confrontation clause of the Constitution, U.S. Const. amends. VI, XIV and Article I, section 18(a) of the Missouri Constitution; and (3) the trial court erred in sentencing Putfark on three separate counts (Counts III, IV, and V) of child molestation in the first degree because the trial court submitted the instruction, and the jury found Putfark guilty of child molestation in the second degree.

We affirm in part and reverse and remand in part. We reverse and vacate the convictions and sentences on counts III and IV. Further, on Count V, the conviction and sentence for the Class A felony of child molestation in the first degree is vacated, and the cause is remanded for the trial court to enter a conviction on Count V for the Class B felony of child molestation in the second degree and for resentencing for Count V within the range of punishment for the Class B felony of child molestation in the second degree. We affirm the judgment of the trial court in all other respects.

2

## Factual Background[2]

K.C.[3], a female child born September 27, 2010, and K.C.'s mother ("Mother") became Putfark's next-door neighbors in 2017. Putfark, born February 28, 1974, served as the live-in caregiver for Michelle Province ("Province"), a woman with whom Mother had developed a friendship as neighbors. Province offered to help Mother take care of K.C. after school until Mother returned home from work. Putfark assisted Province in caring for K.C. after school. As Province became more debilitated from her illness, Putfark began babysitting K.C. more often, both at his house and at K.C.'s home. Putfark spent considerable time with K.C., including playing videogames, wrestling, and going on bike rides to the park alone with K.C. Mother came home one day when Putfark was babysitting K.C. and observed K.C.'s hair was wet from a shower, the clothes K.C. had been wearing earlier that day were in the washing machine, and K.C. was wearing different clothes. Mother testified that this was memorable because K.C. did not take showers without being told, and that it was uncommon for her to shower under Putfark's supervision.

In August of 2019, after Putfark had stopped babysitting K.C. entirely, K.C. disclosed to Mother that Putfark had exposed himself to her. Immediately after the disclosure, Mother took K.C. to the police station. There, officers took a report from Mother and then directed her and K.C. to an organization called Child Safe. K.C. was interviewed by Child Safe employee Hillary Dulaban, a forensic interviewer. During

---

[2] On appeal from a jury-tried case, we view the facts in the light most favorable to the jury's verdict. *State v. Peal*, 393 S.W.3d 621, 623 n.1 (Mo. App. W.D. 2013).
[3] We have used the victim's initials to protect her identity pursuant to section 595.226.1. *State v. Dodd*, 637 S.W.3d 659, 663-64 (Mo. App. W.D. 2021).

3

K.C.'s video recorded interview at Child Safe, she made disclosures consistent with what she told Mother as well as additional disclosures. During the Child Safe interview, K.C. stated that Putfark exposed himself to her on multiple occasions, forced her to shower with him, asked her to touch his genitals, showed her photos of nude people, talked to her about sex, touched her breasts, and kissed her naked genitals on two occasions. During the interview, K.C. was provided anatomical drawings of males and females, and she circled the female genitals when asked where Putfark had "kissed" her. K.C. disclosed two instances in which Putfark "kissed her down there." K.C. detailed that the first time Putfark was unshaven and that his pointy beard hurt her, and that the second time his face was shaved.

After a police officer with the Sedalia Police Department viewed the recorded video from Child Safe, Putfark was taken to the police station for questioning. During the interview at the police station, Putfark admitted to talking to K.C. about sex and masturbation. Putfark also stated that he may have accidentally touched K.C.'s breast or butt while wrestling with her. During the interview Putfark specifically denied all other allegations except for the two occasions when Putfark had "kissed [K.C.] down there." In response to these allegations Putfark did not deny them but instead remarked, "that is interesting because [I do] shave about every six months." The interview concluded with Putfark's arrest.

The State charged Putfark with six felony charges; Count I of statutory sodomy in the first degree, section 566.062, by touching K.C.'s vagina with his mouth in the living room while he was unshaven; Count II of statutory sodomy in the first degree, section

566.062, by touching K.C.'s vagina with his mouth in the living room while he was clean shaven and K.C. was lying on her stomach with her legs extended and her head raised; Count III of child molestation in the first degree, section 566.067, by touching K.C.'s genitals in the living room while he was unshaven; Count IV of child molestation in the first degree, section 566.067, by touching K.C.'s genitals while he was clean shaven and K.C. was lying on her stomach with her legs extended and her head raised; Count V of child molestation in the first degree, section 566.067, by touching K.C.'s breasts through her clothing; and Count VI of sexual misconduct in the first degree, section 566.083, by exposing his genitals to K.C.

During a pre-trial hearing, the parties argued extensively about whether Putfark's trial counsel could question Mother and K.C. on cross-examination regarding K.C. entering Mother's room without permission and taking a sex toy and hiding it in her own room. Mother testified during the 491 hearing[4] that she had discovered that K.C. had taken a sex toy from Mother's room. Mother found the sex toy in K.C.'s room and planned to confront K.C. about why she had taken Mother's sex toy. Mother testified she took K.C. to dinner, and when Mother started to ask K.C. why she had taken Mother's sex toy, K.C. disclosed to Mother for the first time that Putfark had exposed himself to her. At trial, Putfark sought to introduce evidence on cross-examination regarding the discovery of the sex toy, and the State objected. Over the span of two sidebars regarding the relevancy of the testimony, Putfark argued that the testimony about the discovery of the sex toy was relevant because

---

[4] A 491 hearing is a hearing conducted outside the presence of the jury to determine if the "time, content and circumstances" of a minor child's out-of-court statement provides "sufficient indicia of reliability" in order to be admitted "as substantive evidence to prove the truth of the matter asserted." Section 491.075.

it occurred on the day of, and prior to, the initial disclosure by K.C., and that Mother discovering the prohibited item in K.C.'s possession provided K.C. a motive to lie in order to shift blame from herself and avoid punishment. The trial court sustained the State's objection; however, the trial court ruled Putfark could question Mother if K.C. had "done something" prior to the initial disclosure that had gotten K.C. in trouble without referencing the taking and discovery of the sex toy. The trial court also ruled Putfark's trial counsel could ask K.C. whether she thought she was in trouble when she disclosed to Mother that Putfark had exposed himself.

The jury returned guilty verdicts on all six counts, and the trial court sentenced Putfark to terms of ten years' imprisonment on each of counts I and II to be served consecutively to each other but concurrent with any other sentences; terms of ten years' imprisonment on each of counts III, IV, and V to be served concurrently with each other and with any other sentences; and a term of four years' imprisonment on count VI to be served concurrently with any other sentences. This appeal follows.

## Point One

Putfark argues that the trial court erred in convicting and sentencing him on Counts III and IV, child molestation in the second degree, because child molestation in the second degree is a lesser included offense of statutory sodomy in the first degree, and this error violated the constitutional prohibition against double jeopardy, U.S. Const. amends. V, XIV, and section 556.041. Because he failed to raise this issue before the trial court or in a motion for new trial, Putfark seeks plain error review under Rule 30.20. Plain error lies where we find that manifest injustice or a miscarriage of justice has resulted from trial court

6

error. *State v. Baumruk*, 280 S.W.3d 600, 607 (Mo. banc 2009). "A double jeopardy violation determinable from the face of the record is entitled to plain error review." *State v. Clark*, 494 S.W.3d 8, 12 (Mo. App. E.D. 2016) (internal quotations and alterations omitted). "[W]e have discretion to review for plain error only where the appellant asserting error establishes facially substantial grounds for believing that the trial court's error was evident, obvious, and clear, and that manifest injustice or a miscarriage of justice has resulted." *Id.*

"The federal double jeopardy clause provides that no person shall 'be subject for the same offence to be twice put in jeopardy of life or limb.'" *State v. Hardin*, 429 S.W.3d 417, 421 (Mo. banc 2014) (quoting U.S. Const. amend V). "It provides two basic protections: it protects defendants from successive prosecutions for the same offense after acquittal or conviction and it protects defendants against multiple punishments for the same offense." *Id.* Putfark's case implicates the latter protection because he was convicted of and sentenced for the offenses of child molestation and statutory sodomy in the first degree for the same conduct. Section 556.041 provides, in relevant part:

> When the same conduct of a person may establish the commission of more than one offense he or she may be prosecuted for each such offense. Such person may not, however, be convicted of more than one offense if:
>
> (1) One offense is included in the other, as defined in section 556.046[.]

Section 556.046 provides that, an offense is "included" in another if it "is established by proof of the same or less than all the facts required to establish the commission of the offense charged[.]" Section 556.046.1(1). This is "an elements test, under which the elements of the offenses at issue are gleaned from the statutory provisions and

7

compared." *Hardin*, 429 S.W.3d at 422. "An offense is a lesser included offense if it is impossible to commit the greater without necessarily committing the lesser." *Id*. "Child molestation in the first degree is a lesser included offense of first degree statutory sodomy." *State v. Peeples*, 288 S.W.3d 767, 771 (Mo. App. E.D. 2009).

Here, Putfark was convicted of and sentenced for committing child molestation in the first degree,[5] which is a lesser included offense of statutory sodomy in the first degree. "A person commits the offense of statutory sodomy in the first degree if he or she has deviate sexual intercourse with another person who is less than fourteen years of age." Section 566.062. "Deviate sexual intercourse" is defined as follows:

> [A]ny act involving the genitals of one person and the hand, mouth, tongue, or anus of another person or a sexual act involving the penetration, however slight, of the penis, female genitalia, or the anus by a finger, instrument or object done for the purpose of arousing or gratifying the sexual desire of any person or for the purpose of terrorizing the victim.

Section 566.010(3). The jury was instructed that in order to find Putfark guilty of Count I, statutory sodomy in the first degree, they must find, beyond a reasonable doubt:

> First, in that on an unknown date between July 1, 2017, through July 31, 2019, in the State of Missouri, the defendant knowingly had deviate sexual intercourse with K.C., by touching her vagina with his mouth in the living room of the house K.C. was living in while defendant was unshaven[,] [and]
>
> Second, that at the time K.C. was a child less than twelve years old.

---

[5] As discussed in Point III, Putfark was indicted for three counts of child molestation in the first degree; however, the verdict directors given to the jury set forth the elements of three counts of child molestation in the *second* degree that the jury must find beyond a reasonable doubt in order to find Putfark guilty. We note that both child molestation in the first degree and child molestation in the second degree are lesser included offenses of statutory sodomy in the first degree, and the distinction does not affect the Court's analysis on this point.

8

As to the second count of statutory sodomy in the first degree, the jury was instructed that in order to find Putfark guilty they must find beyond a reasonable doubt that "the defendant knowingly had deviate sexual intercourse with K.C., by touching her vagina with his mouth when defendant was clean shaven and K.C. was lying on her stomach with her legs extended and her head raised[,]" and that K.C. was a child less than twelve years old.

"A person commits the offense of child molestation in the first degree if he or she subjects another person who is less than fourteen years of age to sexual contact and the offense is an aggravated sexual offense." Section 566.067. The jury was instructed that in order to find Putfark guilty of Count III, child molestation in the second degree, they must find beyond a reasonable doubt, for the purpose of arousing his own sexual desires and while K.C. was a child less than twelve years old, Putfark "touched the genitals of K.C. in the living room of the house K.C. was living in while defendant was unshaven." As to Count IV, the jury was instructed that in order to find Putfark guilty of child molestation in the second degree they must find beyond a reasonable doubt that Putfark "touched the genitals of K.C. when defendant was clean shaven and K.C. was lying on her stomach with her legs extended and her head raised." The only difference between Counts I and III was Count I indicated the touching was with the mouth and Count III did not describe what part of his body he used to touch her genitals. Counts II similarly instructed the touching was with his mouth and Count IV did not describe the part of his body he used to touch her genitals.

9

Here, the various offenses of child molestation in the second degree are "established by proof of the same or less than all the facts required to establish the commission of the offense charged." Section 556.046. In reaching the verdicts for counts III and IV, the jury considered the same evidence that was necessary to reach the verdicts in counts I and II because the State offered evidence of only two instances in which Putfark touched K.C.'s genitals. In the first instance, the evidence established that Putfark "kissed" K.C.'s genitals while he had a beard. In the second instance, Putfark had shaved and his face was not hairy or prickly while he kissed her vagina. There was no evidence of him touching her vagina with any other part of his body.

> During closing argument, the prosecutor argued:
>
> The first two counts you're going to be asked to consider involve the deviate sexual intercourse. That is the discussion related to his mouth and her genitals. Okay? Now, what do we know about that? Well, the details tell us; shaven and unshaven. She talked about that. That's laid out for you. It's clear. We talk -- and that -- that contact, mouth -- to genital, that is the offense. That's how you get to the offense. The distinction is the shaven and unshaven. Okay? *Same with the subsequent two contacts.* They're the sexual contact. It's contact with her vagina. In all of these -- with her genitals. (Emphasis added).

While the offense of statutory sodomy required the jury to find Putfark touched K.C.'s genitals with his mouth, a conviction of child molestation only required the jury to believe that Putfark touched the genitals of K.C. during the same incidents. However, the only evidence before the jury was that Putfark touched her genitals with his mouth and the only facts submitted to the jury in the instructions was that Putfark touched her genitals. There was no evidence of any other touching of her genitals, and the jury instruction did not set forth a touching of her genitals with any other part of his body. The only factual

10

differentiation between the charges was one time the events occurred when he was unshaven and one time the events occurred when he was shaven and her body was in a particular position. Therefore, each count of child molestation in the second degree was established with fewer facts necessary to establish each count of statutory sodomy, and the jury returned guilty verdicts for both counts of statutory sodomy as well as both counts of child molestation. This double jeopardy violation is clearly determinable from the face of the record and therefore constitutes plain error, which the State acknowledged in their briefing before this court. The State concedes this error and that this point must be granted even under plain error review. Accordingly, Putfark cannot be convicted or sentenced more than once for the same offense, and the convictions and sentences for counts III and IV must be vacated.

Point one is granted.

### Point Two

Putfark's second Point reads as follows:

> The trial court plainly erred in preventing cross-examination of K.C. and K.C.'s mother regarding K.C.'s taking and secreting of K.C.'s mother's sex toy from K.C.'s mother's room, the discovery of which by K.C.'s mom immediately preceded K.C.'s disclosure of sexual abuse, because this violated of Mr. Putfark's rights to due process, a fair trial, and Confrontation under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution, and Article I, [sections] 10 and 18(a) of the Missouri Constitution, in that, this information was not prohibited evidence under Rape Shield, wholesale exclusion of witness'[s] bias or potential fabrication is not allowed, and violated his right to Confront his accusers.

As an initial matter, we note this point relied on is multifarious. "Multiple claims of error in one point relied on renders the point multifarious and as such is a violation of

11

Rule 84.04, made applicable to briefs in criminal appeals by Rule 30.06(c)." *State v. Leonard*, 490 S.W.3d 730, 736 (Mo. App. W.D. 2016) (quoting *State v. Garrison*, 276 S.W.3d 372, 378 n.4 (Mo. App. S.D. 2009)). Here, Putfark challenges the trial court's ruling on multiple legal grounds, namely, that the ruling violated his right to due process and a fair trial under the Fifth Amendment, and his right to confront his accuser under the Sixth Amendment. Rule 84.04(d) requires that each claim of error must be presented in a single point relied on. Moreover, Putfark cites additional legal reasons for reversal, including that the evidence was not prohibited under the Rape Shield statute, and the wholesale exclusion of witness bias is not allowed. "Generally, multifarious points preserve nothing for appellate review and are ordinarily subject to dismissal." *Leonard*, 490 S.W.3d at 736. "However, because we prefer to decide cases on the merits where an appellant's argument is readily understandable--as is the case here . . . we exercise our discretion to review the case on the merits." *State v. Dodd*, 637 S.W.3d 659, 666 (Mo. App. W.D. 2021) (internal quotations and citations omitted).

Putfark argues the trial court erred in excluding testimony from Mother and K.C. on cross-examination regarding Mother's discovery of her sex toy taken from her room by K.C., which preceded K.C.'s disclosure to Mother about Putfark exposing himself. Putfark argues this issue was preserved for appeal because he repeatedly argued for the admission of this testimony both pre-trial and during trial. Putfark himself also discussed this issue with the trial judge before sentencing. However, "For an allegation of error to be considered preserved and to receive more than plain error review, it must be objected to during the trial *and* presented to the trial court in a motion for new trial." *State v. Loper*,

12

609 S.W.3d 725, 732 (Mo. banc 2020) (quoting *State v. Walter*, 479 S.W.3d 118, 123 (Mo. banc 2016)). "Including a claim of error in a motion for new trial is a requirement of preserving an issue for review[.]" *Id.* at 733. As is the case here, absent raising this issue in a motion for new trial, Putfark's claim of error is only reviewable for plain error.[6]

Plain error review includes two steps. The first step involves an examination to determine whether "plain error" has, in fact, occurred, or in other words, whether the claim for review "facially establishes substantial grounds for believing that 'manifest injustice or miscarriage of justice has resulted.'" *State v. Scurlock*, 998 S.W.2d 578, 586 (Mo. App. W.D. 1999) (quoting *State v. Brown*, 902 S.W.2d 278, 284 (Mo. banc 1995)). Plain errors are those which are "evident, obvious, and clear[.]" *Id.* (quoting *State v. Bailey*, 839 S.W.2d 657, 661 (Mo. App. W.D. 1992)). "If plain error is found on the face of the claim, then the rule authorizes, as a matter of court discretion, a second step to determine whether the claimed error resulted in manifest injustice or a miscarriage of justice." *Id.* "The defendant bears the burden of showing that an alleged error has produced such a manifest injustice." *State v. Isa*, 850 S.W.2d 876, 884 (Mo. banc 1993).

Putfark argues the trial court should have permitted cross-examination of K.C. and Mother regarding the discovery of Mother's sex toy. Mother testified during the 491 hearing that she found her sex toy in K.C.'s room, and when Mother began asking K.C.

---

[6] In addition, Putfark failed to properly preserve these constitutional arguments for appellate review under our precedent. In order to preserve a constitutional issue for appellate review, a party must (1) raise the issue at the first available opportunity, (2) note the constitutional provision claimed to be violated by specifically referencing the article and section of the constitution or by quoting the constitutional provision itself, (3) state the facts that constitute the constitutional violation, and (4) preserve the constitutional issue throughout the proceeding. *State v. Williams*, 904 S.W.2d 103,105 (Mo. App. E.D. 1995) (quoting *State v. Hillis*, 748 S.W.2d 694, 697 (Mo. App. E.D. 1988)).

why she had taken the sex toy from Mother's room, K.C. disclosed that Putfark had exposed himself to her. Putfark's trial counsel wished to cross-examine both Mother and K.C. about the discovery of the sex toy as a motive for K.C. to lie about Putfark exposing himself. Although the parties briefly argued the admissibility of this testimony pre-trial, it appears from the record some confusion occurred that led to a further conversation among the prosecutor, trial counsel, and the trial judge during a sidebar during trial after the State objected to trial counsel's questioning of Mother. During this sidebar, trial counsel argued that Mother's confronting K.C. about taking the sex toy gave K.C. a motive to lie about Putfark's exposure of his genitals to change the subject or shift blame off of her. The trial court sustained the State's objection and only allowed trial counsel to ask Mother if K.C. was in trouble "for anything on that day." Mother testified that K.C. was not in trouble. Similarly, trial counsel was confined to asking K.C. if she remembered taking something she was not supposed to take without specifically referencing the sex toy. In response, K.C. testified she did not remember. No offer of proof was made with either witness.

Putfark argues the exclusion of the testimony on cross-examination regarding the discovery of the sex toy violated his constitutional rights under the Confrontation Clause.[7] "[T]he Supreme Court has held that the Confrontation Clause confers a right to cross-examine witnesses to expose bias or a motive to fabricate[.]" *State v. Raines*, 118 S.W.3d 205, 213 (Mo. App. W.D. 2003) (citing *Olden v. Kentucky*, 488 U.S. 227, 231, 109 S. Ct. 480, 102 L. Ed. 2d 513 (1988)). "While a meaningful opportunity for cross-examination

---

[7] The protections provided by Section 18(a) of the Missouri Constitution are coextensive with those of the Sixth Amendment. *State v. Campbell*, 600 S.W.3d 780, 787 n.3 (Mo. App. W.D. 2020).

is necessary, 'the Confrontation Clause guarantees only an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'" *State v. Campbell*, 600 S.W.3d 780, 788 (Mo. App. W.D. 2020). "Trial courts have broad discretion in limiting the scope of cross-examination." *Raines*, 118 S.W.3d at 213 (citing *State v. Dunn*, 817 S.W.2d 241, 245 (Mo. banc 1991)). "'[T]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on . . . cross examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness'[s] safety, or interrogation that is repetitive or only marginally relevant.'" *Id.* at 214 (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S. Ct. 1431, 89 L.Ed. 2d 674 (1986)).

"There is no question that [Putfark] was entitled to engage in reasonable cross-examination" bearing upon K.C.'s motive to fabricate. *Dunn*, 817 S.W.2d at 244. However, the testimony Putfark wished to elicit from Mother and K.C. regarding the sex toy was not relevant in relation to the surrounding facts. "To be admissible, evidence must be both logically and legally relevant." *State v. Drago*, 531 S.W.3d 627, 630 (Mo. App. E.D. 2017). "Evidence is logically relevant if it tends to make the existence of a material fact more or less probable." *State v. Donovan*, 539 S.W.3d 57, 70 (Mo. App. E.D. 2017). Evidence is legally relevant if its probative value outweighs its costs, such as "the dangers of unfair prejudice, confusion of the issues, undue delay, misleading the jury, waste of time, or needless presentation of cumulative evidence." *Id.* at 70-71. "Motive for false accusation of one charged with a crime by a witness for the state is a proper subject for inquiry in a criminal prosecution, and evidence to prove the motive may be developed

15

either by cross-examination or by impeachment." *State v. Lampley*, 859 S.W.2d 909, 911 (Mo. App. E.D. 1993). However, though a trial court may not entirely prevent cross-examination into a witness's bias, the court may "properly limit the scope and extent" of it. *Id.*

Although logical relevance is a "very low threshold," *Kappel v. Prater*, 599 S.W.3d 189, 193 (Mo. banc 2020), Putfark fails to meet it under these facts. Both in arguments to the trial court and on appeal, Putfark fails to explain how Mother's discovery of a stolen sex toy motivated K.C. to fabricate a story about her babysitter exposing himself to her. Putfark presented no evidence or argument that linked the discovery of the sex toy to a false accusation of Putfark. Trial counsel's only attempt to connect the dots was by arguing that "people's minds work in mysterious ways," and that the threat of punishment from Mother for stealing an object from her room motivated K.C. to shift the blame by fabricating a story about Putfark. To further examine the possible connection between the sex toy and K.C.'s possible motive to lie, the trial court asked Putfark's defense Counsel, "So if [Mother] accused [K.C.] of taking a matchbook, she would likely make up a story about your client?" Putfark's Counsel responded, "I don't know…." Putfark's arguments are unconvincing. Nothing in the record suggests Putfark had any association with this sex toy, or that this sex toy, or any sex toy, was involved in the molestation of K.C. And the record lacks any evidence that K.C. would have been punished for her possession of this particular item. Although motive for false accusations is a proper inquiry on cross-examination, the discovery of Mother's sex toy does not have any tendency to make this motive to fabricate more or less probable. *See State v. Blurton*, 484 S.W.3d 758, 778 (Mo.

16

banc 2016) ("The daughter's testimony of her fear, therefore, was, of tenuous logical relevance to show that the daughter had a motive to falsely accuse Mr. Blurton.").

Mother testified at the 491 hearing that after she found the sex toy in K.C.'s room and planned to talk to her about why she had entered Mother's room when she was not supposed to and why she had taken the item from her room. That day, Mother took K.C. to a friend's birthday party and then took her to eat at Panera so she could talk to K.C. about the situation. When Mother asked K.C. about taking the sex toy from her room, K.C. became uncomfortable and stated that she did not know why she had taken it. It was during that discussion that K.C. shared with Mother that Putfark had exposed himself to her. Mother testified at the 491 hearing that she does not "have a set punishment," but listed several forms of discipline she has used when K.C. misbehaves, including discussing the situation with her, making K.C. stand with her nose against the wall for up to ten minutes, and grounding her from things K.C. enjoys, such as digital time. Putfark failed to establish that K.C. would have faced any discipline beyond the conversation about the sex toy or even that K.C. believed she would have faced punishment for entering her Mother's room without permission or for removing the sex toy from the room. Trial counsel was allowed to ask Mother if K.C. was in trouble for anything at the time of the conversation, and Mother testified repeatedly that K.C. was not in trouble. Trial counsel was also allowed to ask K.C. at trial about the conversation with Mother at the restaurant, and K.C. testified that she did not disclose Putfark's actions prior to that conversation because she "thought she would get in trouble." Upon further questioning she stated that she did not know why she thought she would get in trouble. She also testified that in the past when she had been

17

in her mother's room without permission she had to "stand on the wall," which appears consistent with Mother's testimony that one form of discipline was having K.C. stand with her nose against the wall. Putfark fails to explain how the fact that the item taken from Mother's room was a sex toy would have established a motive for K.C. to falsely accuse him of exposing himself to her. Further, the bases for the most serious charges that Putfark faced did not arise from the disclosure of his exposing his penis to her, but arose from the later disclosures in the Child Safe interview. Putfark does not even attempt to explain how the discovery of the sex toy would have had any impact on K.C.'s disclosure of the separate statutory sodomy events. [8]

Further, as required under plain error analysis, Putfark fails to show how this alleged error led to manifest injustice. The trial court permitted Putfark to ask both Mother and K.C. if K.C. was in trouble "for something" prior to disclosing to Mother that Putfark had exposed himself. Both Mother and K.C. testified that K.C. was not in trouble when K.C. disclosed to Mother that Putfark had exposed himself. Further, the record reflects the trial court permitted wide latitude in the cross-examination of both Mother and K.C. regarding K.C.'s motive to fabricate. Indeed, the trial court later characterized trial counsel's cross-examination of K.C. as "a pretty brutal cross-examination of a little girl." Putfark was

---

[8] On appeal, Putfark argues section 491.015, commonly referred to as "rape shield," does not apply to preclude cross-examination of the discovery of Mother's sex toy because section 491.015 only prohibits testimony of sexual conduct, and the discovery of the sex toy does not fall within sexual conduct. Putfark cites to the trial judge's statements during sentencing when he explained to Putfark that trial counsel was not permitted to discuss the discovery of the sex toy "under the rape shield case." However, our reading of the record reflects the trial court excluded the testimony primarily on relevancy grounds, and no discussion regarding section 491.015 occurred at the time the trial court ruled on the admissibility of the evidence. We recognize the trial court most likely considered the policy implications behind section 491.015 in its consideration of relevancy; however, our opinion here does not discuss applicability of section 491.015 to this case.

18

allowed to question both witnesses about whether K.C. was in trouble or facing punishment at the time of the initial disclosure; the only thing he was prohibited from asking about was the exact nature of the item removed from Mother's bedroom. Therefore, it is clear from the record that the trial court afforded reasonable cross-examination to Putfark and only excluded testimony that was irrelevant and unfairly prejudicial. Accordingly, the trial court did not plainly err, and no manifest injustice resulted from the exclusion of testimony.

The trial court did not plainly err in excluding Mother's and K.C.'s testimony on cross-examination regarding the discovery of the sex toy.

Point two is denied.

## Point Three

Putfark argues that the trial court erred in convicting and sentencing him on Count V for the Class A felony of child molestation in the first degree, section 566.067, when the trial court submitted the verdict directing instruction to the jury, for the Class B felony of child molestation in the second degree, section 566.068. Putfark concedes he raises this issue for the first time on appeal; therefore, he seeks plain error review under Rule 30.20. As noted, "[W]e have discretion to review for plain error only where the appellant asserting error establishes facially substantial grounds for believing that the trial court's error was evident, obvious, and clear, and that manifest injustice or a miscarriage of justice has resulted." *Clark*, 494 S.W.3d at 12.

"A judgment of conviction shall set forth the plea, the verdict or findings, and the adjudication and sentence." Rule 29.07(c). "Clerical mistakes in judgments, orders or other parts of the record and errors in the record arising from oversight or omission may

19

be corrected by the court at any time after such notice, if any, as the court orders." Rule 29.12(c).

Here, Putfark was charged in the indictment on Count V of the Class A felony of child molestation in the first degree, for which the range of punishment is not less than ten years and not more than thirty years, or life in prison. Section 558.011.1. However, the verdict director instructed the jury that, to find Putfark guilty under Count V of the Class B felony of child molestation in the second degree, the jury must believe the evidence supporting the elements of the offense was proven beyond a reasonable doubt. The relevant verdict director given to the jury on Count V was based on MAI-CR 4th 420.22, child molestation in the second degree, and the jury returned a guilty verdict on Count V. The Class B felony for which Putfark was convicted has a range of punishment of not less than five years and not to exceed fifteen years. Despite this, the trial court entered the judgment of conviction and sentence on Count V for child molestation in the first degree. The State acknowledges in its brief that the trial court was in error but urges this Court to correct the judgment by *nunc pro tunc* to properly reflect the offense was a Class B felony rather than a Class A felony but not to remand for a new sentencing hearing because the trial court's sentence on this count was within the statutory range of punishment for the Class B felony.

Although the trial court sentenced Putfark within the acceptable statutory range of punishment for a class B felony, it appears the trial court believed the acceptable range of punishment under Count V to be not less than ten years, which is what the trial court sentenced Putfark to serve on this count. The Sentencing Assessment Report ("SAR") in front of the trial court also erroneously described Count V as child molestation in the first

20

degree, and both the State and Putfark's trial counsel recommended the minimum sentence for a class A felony, ten years' imprisonment, on Count V. It is unclear from this record, had the trial court been aware that the minimum sentence for this count was five years rather than ten years, whether the trial court would have sentenced Putfark to a term of less than ten years on this count. This constitutes evident, obvious, and clear error, and a manifest injustice and a miscarriage of justice has resulted that affects Putfark's substantial rights.

We recognize our Supreme Court addressed a similar sentencing issue in *State v. Perry*, 548 S.W.3d 292 (Mo. banc 2018). In *Perry*, the trial court mistakenly believed the range of punishment for Perry's offenses was five to fifteen years in the Department of Corrections based on a conviction of a Class C felony as a persistent offender. *Id.* at 300. The correct range of punishment for Perry's offenses was one year in the county jail to fifteen years in the Department of Corrections. *Id.* The trial court sentenced Perry to eight years in the Department of Corrections. *Id.* at 297. Although the trial court had a mistaken belief regarding the permissible range of punishment, the Supreme Court held the trial court did not plainly err because Perry failed to establish that the trial court "imposed the eight-year sentence *based* on that mistaken belief." *Id.* at 301. "The circuit court did not sentence Perry to the misstated minimum sentence; instead, it sentenced him to an even longer sentence." *Id.* In this case, however, the trial court only considered the Class A felony, child molestation in the first degree, as presented in the SAR and arguments from counsel at the sentencing hearing. The trial court sentenced Putfark on Count V to the minimum sentence for the range of punishment that the trial court mistakenly believed

21

applied to this case. Therefore, we remand Count V to the trial court for resentencing for Count V after considering the full range of punishment for the Class B felony of child molestation in the second degree.

## Conclusion

For the above stated reasons, the judgment of the trial court is (1) reversed and remanded with instructions to vacate Putfark's convictions and sentences for Counts III and IV, (2) on Count V the conviction and sentence for the Class A felony of child molestation in the first degree is vacated, and the cause is remanded for the trial court to enter a conviction for the Class B felony of child molestation in the second degree and for resentencing for Count V after consideration of the full range of punishment for the Class B felony of child molestation in the second degree, and (3) affirmed in all other respects.

_____
Gary D. Witt, Judge

All concur